UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAYLYNED J. CAGEY,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C13-2219-JLR-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Jaylyned J. Cagey appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Supplemental Security Income ("SSI") under Titles XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I.   FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a twenty two year old man with a high school education. Administrative Record ("AR") at 30. He has no past relevant work. AR at 19. Plaintiff was last employed in high school when he worked as a caregiver at a senior center. AR at 33.

REPORT AND RECOMMENDATION - 1

On May 11, 2011, plaintiff filed a claim for SSI payments alleging an onset date of March 3, 1993. AR at 11, 127-31. Plaintiff asserts that he is disabled due to seizure disorder, dementia due to seizures, and mixed receptive expressive language disorder. AR at 149.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 69-75, 78-81. Plaintiff requested a hearing which took place on August 6, 2012. AR at 24-46. On September 24, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 8-23. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On December 18, 2013, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Cagey bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On September 24, 2012, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since May 11, 2011, the application date.

2. The claimant has the following severe impairments: seizure disorder, organic mental disorder and affective disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can only occasionally climb ramps/stairs, can never climb ladders, ropes or scaffolds, and should avoid even moderate exposure to hazards.  Additionally, the claimant has the mental capacity to adequately perform the mental activities generally required by competitive, renumerative [sic] work as follows: He can understand, remember, and carry out simple instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work; can make judgments on simple work-related decisions and can respond appropriately to supervision, co-workers and deal with changes all within a stable work environment; and has no difficulty dealing with the public.

5. The claimant has no past relevant work.

REPORT AND RECOMMENDATION - 5

6. The claimant was born on XXXXX, 1990 and was 21 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 11, 2011, the date the application was filed.

AR at 13-20.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ gave specific and legitimate reasons for rejecting the opinion of Joseph W. Lenz, Ph.D.

2. Whether the ALJ properly considered Plaintiff's seizure disorder in his residual functional capacity assessment

Dkt. 14 at 1.

## VII.   DISCUSSION

A. <u>The ALJ Erred by Failing to Provide Specific and Legitimate Reasons to Reject the Opinion of Examining Psychologist Joseph W. Lenz, Ph.D.</u>

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

REPORT AND RECOMMENDATION - 7

consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

Joseph W. Lenz, Ph.D. completed a psychological examination of plaintiff on April 12, 2011. AR at 232-41. Dr. Lenz diagnosed plaintiff with dementia due to a profound, intractable seizure disorder; adjustment disorder with depressed mood; and mixed receptive-expressive language disorder and measured plaintiff's GAF score at 31. AR at 234. Dr. Lenz performed extensive testing measuring plaintiff's full scale IQ at 74 and finding plaintiff's short term memory to be severely impaired. AR at 233. Dr. Lenz opined plaintiff would be markedly limited in performing routine tasks without undue supervision and in communicating and performing effectively in a work setting with limited public contact. AR at 235. Dr. Lenz also opined plaintiff would be severely limited in his ability to learn new tasks and in his ability to communicate and perform effectively in a work setting with public contact. AR at 235.

The ALJ discredited Dr. Lenz's opinion, finding it inconsistent with plaintiff's reported activities and plaintiff's ability to complete high school and attend less than a full year of college. AR at 18. Plaintiff argues these were not specific and legitimate reasons to discredit Dr. Lenz's opinion. Dkt. 14 at 7-11. The Court agrees.

The first reason given by the ALJ to discredit Dr. Lenz's opinion is that it was inconsistent with plaintiff's reported activities. Inconsistency between plaintiff's reported activities and a medical opinion may be a specific and legitimate reason to discredit such an opinion. *See Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding the rejection of a physician's conclusion that claimant suffered from marked limitations in part on the basis that other evidence of claimant's ability to function, including reported activities of daily living, contradicted that conclusion). However, the Court is not

convinced that the limited activities mentioned by the ALJ are inconsistent with Dr. Lenz's opinion. The ALJ noted plaintiff's ability to clean his room, do his own laundry, shop with his aunt, and play basketball with friends, all of which were taken from plaintiff's function report. AR at 18. The ALJ failed to mention that plaintiff also reported in this document that he does not leave his house alone, that he needs reminders to take his medication, and that he does not do any of his own cooking. AR at 138-39. Further, while plaintiff mentioned occasionally doing the activities specified by the ALJ, there is no indication as to how well he performs those activities.

Also, Dr. Lenz was aware of many of the activities the ALJ pointed out. Plaintiff reported to Dr. Lenz that he did light cleaning around the house and that he occasionally played basketball with friends. AR at 234. Despite this knowledge, Dr. Lenz still found plaintiff to have severe functional limitations. AR at 235. The ALJ does not explain, and it is not clear to the Court, that plaintiff's ability to do minimal chores, play basketball, and accompany his aunt to the grocery store is inconsistent with Dr. Lenz's opined limitations.

The ALJ also discredited Dr. Lenz's opinion finding it inconsistent with plaintiff's ability to graduate high school and attend college for a short period of time. AR at 18. Again, Dr. Lenz was aware of that plaintiff had graduated high school and did not attend a special education program, and he did not find this inconsistent with his opined limitations. AR at 232. Further, plaintiff graduated from high school in 2008. AR at 232. Dr. Lenz evaluated plaintiff three years later and noted that his condition was deteriorating and that his memory problems "could be due to the seizure disorder itself or to the medication he takes to treat it— or a combination of the two." AR at 234. Additionally, plaintiff did not complete a full year of college and there is limited information on how successful plaintiff was while attending college level classes. AR at 30.

REPORT AND RECOMMENDATION - 9

1    Plaintiff's schooling and limited activities are not inconsistent with Dr. Lenz's opinion,
2    and are not specific and legitimate reasons to discredit the opinion.  Thus, the ALJ erred in
3    evaluating Dr. Lenz's opinion.  *See Bayliss,* 427 F.3d at 1216.  The Ninth Circuit has
4    "recognized that harmless error principles apply in the Social Security Act context." *Molina v.*
5    *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security*
6    *Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The court noted that
7    "in each case we look at the record as a whole to determine [if] the error alters the outcome of
8    the case." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  The court also noted that the
9    Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is
10   'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v.*
11   *Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted).  Dr.
12   Lenz opined significant functional limitations that were not included into the ALJ's RFC
13   finding.  Had this opinion been accorded weight, the disability determination would likely
14   change.  Thus, the ALJ's error was not harmless.  *See Molina*, 674 F.3d at 1115.

15       B.    The ALJ Should Reevaluate his Residual Functional Capacity Assessment
16   "RFC is an assessment of an individual's ability to do sustained work-related physical
17   and mental activities in a work setting on a regular and continuing basis.  A 'regular and
18   continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."
19   SSR 96-8p at 1.  The RFC assessment must be based on all of the relevant evidence in the case
20   record, such as:  medical history; the effects of treatment, including limitations or restrictions
21   imposed by the mechanics of treatment (e.g., side effects of medication); reports of daily
22   activities; lay activities; recorded observations; medical source statements; effects of
23   symptoms, including pain, that are reasonably attributed to a medically determinable
24

REPORT AND RECOMMENDATION - 10

impairment; evidence from work attempts; need for structured living environment; and work evaluations. SSR 96-8p.

Plaintiff argues the ALJ erred in his RFC finding by failing to include limitations resulting from plaintiff's frequent seizures. Dkt. 14 at 11-16. The Court agrees. While the ALJ properly found that plaintiff did not meet listing 11.02 or 11.03 due to his lack of compliance with treatment, the ALJ also found that the record showed plaintiff had seizures at a frequency consistent with those listings.[3] AR at 14. The ALJ failed to include any attendance and persistence limitations resulting from these frequent seizures into his RFC finding. AR at 15-16. This was legal error.

Defendant argues that plaintiff's lack of compliance with his medications was a sufficient reason to discredit plaintiff's credibility and thus not include the seizure limitations in the RFC finding. Dkt. 15 at 8-10. A claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or the medical reports or records show that the individual is not following the treatment as prescribed or there are no good reasons for their failure." SSR 96-7p, 1996 WL 374186 *7. On the other hand, the ALJ "must not draw any inferences" about a claimant's symptoms and their functional effects from such a failure, "without first considering any explanations" that the claimant "may provide, or other information in the case record, that may explain" that failure. *Id.* The record, including the medical opinion of Dr. Lenz, provides evidence that plaintiff had severe memory problems which affected plaintiff's ability to take his medications as prescribed. AR at 28-29, 36-38, 139, 209, 232-41, 376. Despite plaintiff's medication compliance being a vital issue in the

---

[3] Listing 11.02 requires grand mal or psychomotor seizures occurring more frequently than once a month. Listing 11.03 requires petit mal, psychomotor, or focal seizures occurring more frequently than once weekly. *See* 20 C.F.R. pt. 404, subpt. P., App. 1, Listings 11.02, 11.03.

REPORT AND RECOMMENDATION - 11

case, the ALJ did not consider plaintiff's reasons for not complying with treatment in his decision. Thus, the ALJ failed to comply with SSR 96-7p.

Regardless, even if the ALJ had considered plaintiff's reasons for not taking his medications, and found the reason to be unsatisfactory, this would not be a legally sufficient reason to fail to include plaintiff's seizure limitations in the RFC finding. Plaintiff's lack of treatment may validly detract from plaintiff's credibility; however, the frequency of plaintiff's seizures is not based on plaintiff's subjective statements, but is supported by objective medical records. AR at 14. Also, as stated previously, the ALJ admitted that the record supported listing level frequency of seizures. AR at 14. Thus, even if plaintiff's credibility is properly discounted, the ALJ still erred in failing to include all limitations supported by the record in the RFC finding.

Plaintiff further argues that the ALJ erred because he found plaintiff not disabled due to his lack of medication compliance, without following SSR 82-59. Dkt. 14 at 15-16. SSR 82-59 states that

> [a]n individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability.

SSR 82-59, 1982 WL 31384, at *1, 2. For this regulation to apply, plaintiff would first need to be found disabled. However, even if plaintiff's additional seizure limitations are considered, the record is not clear that a finding of disability would be required.

Plaintiff asserts that his frequent seizures would cause a number of absences in the work place, which would affect his ability to sustain competitive employment. Dkt. 14 at 12. However, plaintiff admits that the record is unclear regarding how many absences would be tolerated by employers. Dkt. 14 at 12. The ALJ questioned the vocational expert regarding

REPORT AND RECOMMENDATION - 12

absences in the workplace, and the vocational expert testified that someone with that level of absenteeism would be unable to work. AR at 44. However, the transcript is incomplete and does not include what number of absences the ALJ asked about. AR at 44. While it seems reasonable that because plaintiff's seizures were occurring at a listing level frequency, they would likely be in excess of employer tolerated absenteeism, it cannot be said for certain due to the incomplete vocational expert testimony. Therefore, it is not clear whether plaintiff's seizures related limitations would require a finding of disability, thus making SSR 82-59 applicable in this case.

Regardless, the Court has already concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration. In addition, the ALJ should reevaluate plaintiff RFC, which is based on the ALJ's erroneous evaluation of the medical evidence and fails to include all limitations supported by the record. *See* 20 C.F.R. §416.945. Upon remand, the ALJ should also consider plaintiff's medical compliance and determine whether SSR 82-59 is relevant.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.   A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **October 21, 2014**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of

objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 24, 2014**.

DATED this 7th day of October, 2014.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14